UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EMPLOYEE PAINTERS TRUST HEALTH & WELFARE FUND, WESTERN WASHINGTON PAINTERS DEFINED CONTRIBUTION PENSION TRUST, WESTERN WASHINGTON APPRENTICESHIP AND TRAINING TRUST, WESTERN WASHINGTON PAINTERS LABOR MANAGEMENT COOPERATION TRUST FUND, INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES PENSION FUND AND INTERNATIONAL BROTHERHOOD OF PAINTERS & ALLIED TRADES UNION & INDUSTRY FUND, and INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES DISTRICT COUNCIL NO. 5,

Plaintiffs,

v.

TIMOTHY E. JACKSON and JODI L. JACKSON, and the marital community comprised thereof, and BRYDON PAINTING SERVICE,

Defendants.

CAUSE NO.: C06-5145 KLS

FINDINGS OF FACT AND CONCLUSIONS OF LAW

A bench trial was held in this matter on Wednesday, April 4, 2007. The plaintiffs were represented by their counsel Robert Bohrer and David Tuttle. The defendants were present and represented by their

counsel John Spencer and David Land.

FINDINGS OF FACT

This Court has jurisdiction over the parties and the subject matter of this law suit pursuant to §301(a) of the Labor-Management Relations Act (the Act), 29 U.S.C. §185(a) and §§502(a)(3) and 1132(e)(2) as well as under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(3) and 1132(e)(2).

Based on the Admitted Facts contained in the parties' pre-trial order (Dkt. #40), the Court finds as follows:

1. The plaintiffs are joint Labor-Management Trust Funds (Trust Funds) and are governed under the Act, 29 U.S.C. § 141 et seq. and ERISA 29 U.S.C. § 1001 et seq.

2. Brydon Painting (Defendants) and the International Union of Painters and Allied Trades (Union) signed a Collective Bargaining Agreement (CBA) effective March 1, 2000 through February 28, 2005.

3. The Trust Funds are third-party beneficiaries to the Collective Bargaining Agreement between the Defendants and the Union.

4. The Defendants made contributions to the Trust Funds from March 2000 through September 2006. Based on the evidence presented at trial, this Court also finds that the Defendants continued to make contributions to the Trust Funds through the date of the trial.

5. The Defendants' employees have applied for and received benefits from the Trust Funds in accordance with the Trust Agreement and Collective Bargaining Agreement from March 2000 through September 2006. Based on the evidence presented at trial, this Court also finds that the amount of such benefits paid to some of the Defendants' employees from January 2005 to the present is $5,900.00 .

6. By signing the Collective Bargaining Agreement the Defendants agreed to be bound by the Trust Funds Trust Agreement, which mandates that all corporate officers accept personal liability for contributions to the Trust Funds. The Court finds that Timothy E. Jackson and Jodi L. Jackson are Vice-President and President, respectively, of Brydon Painting Service and are therefore corporate officers of Brydon Painting Services Inc.

7. The Defendants are doing business within the jurisdiction of this Court as that activity is defined

under § 301 of the Act, 29 U.S.C. § 141 et seq.

Based on the evidence presented at trial, the Court finds as follows:

8. The CBA signed by the Defendants is the controlling contract between the Defendants and the Union. The Defendants have refused to sign the new CBA which was effective March 1, 2005.

9. The Defendants are obligated to submit Monthly Contribution Reports to the Trust Funds. The reports identify, by name, each employee whose work is covered under the CBA as well as the number of hours each employee worked for the month. Based on that information, calculations are made as to the amount of money the employer owes to the Trust Funds for Health & Welfare, Pension Fund, L/M Fund, Apprentice Fund, Industry Fund and IBPAT Pension Fund.

10. The applicable CBA established a ceiling regarding employer contributions to Health & Welfare of $2.05. If premiums increased for Health & Welfare during the time of the contract, the entire amount due would be submitted to the Trust Funds by the Defendant. The Defendant was then authorized to deduct the difference from the employee's pay check. The cap of $2.05 could then be taken into consideration by the Defendant in bids he submitted for painting jobs.

11. Pursuant to Article 23, ¶ 23.1 of the CBA the Collective Bargaining Agreement is automatically renewed from year to year "unless the Employer or the Union gives written notice of intention to modify the terms of this Agreement or to terminate this Agreement at least 60 days, but not more than 90 days prior to February 28, 2005, or as the case may be, of a subsequent anniversary date." Neither party has ever given the other such written notice. The CBA has therefore automatically renewed itself on an annual basis since March 1, 2005.

12. Pursuant to the terms of the CBA, the Agreement "shall automatically renew itself from year to year..." The Defendants argue that this contractual language means that their maximum contribution to the Painters Health & Welfare Trust is $2.05 as set forth in Article 19, ¶19.2.

The Plaintiffs respond to this argument on two basis. First, Article X, ¶ 10.3 of the CBA provides as follows: "Employer adopts and agrees to be bound by the terms of the Trust Agreements establishing the Funds referred to in this Article and **agrees to be bound by all past and future lawful acts of the Trustees of each such Fund.**" (Emphasis added). The Court finds that this language clearly compels the Defendants to submit contributions based on the rates established for the Trust Funds, even if such rates

are established after February 28, 2005.

According to both Steve Bloom, the Business Representative for the Painters District Council No. 5, and Erik Reed, Administrator of the Employee Painters Trust Funds through Zenith Administrators, the present Health & Welfare rate is $4.55 per hour.

13. The Plaintiffs second response is that the Defendants, by their actions, have approved and ratified the new rates by their payments of the new rates and acceptance of employee benefits. This Court finds that the Defendants have, by their actions approved and ratified the new rates by payments of the new rates and acceptance, by their employees, of employee benefits.

The Defendants did not establish that they appropriately objected to the new rates. They also failed to establish, so far as relevant, that they were forced under duress or coercion to make contributions to the Trust Funds pursuant to the rates established after February 28, 2005.

Timothy Jackson testified that sometime in November 2005 he told John Ranquet, a collections attorney for the Trust Funds, that he had made a substantial overpayment and said he would not pay on new contract rates. This statement was made at least eight months after new rates were in effect. Other than that one conversation, he provided no facts to support a claim that he objected to paying the rates which were set forth on the Monthly Contribution Reports.

On the other hand, Jodi Jackson testified that she complained many times about the rates as far back as 2002. This Court notes that the initial term of the CBA was from 2000 through February 28, 2005. She did not testify as to any facts regarding to whom she made those complaints or, in fact, the content of her complaints. It was not until cross-examination that she testified that she complained to the Auditor who was sent out by the Trust Funds to conduct an audit. This complaint was made after this suit was filed and not until July 2006. She also named Melissa Kollman, who is the Accounts Control Technician for Zenith Administrators. Zenith Administrators administers the Trust Funds. She did not, however, provide any facts as to when she complained, how often or even the basis of such complaints other than the conclusory statement that she complained “many times.” The Defendants’ testimony compels this Court to find that the defendants failed to make timely and sufficient objections to any appropriate representative of the Trust Funds regarding any new rates.

Jodi Jackson also testified that she felt compelled to make the payments under the new rates as she

was worried about her credit rating and concerned about threats of litigation to collect the amounts due as calculated by the Trust Funds. These personal concerns do not raise to the level of any type of duress or coercion by the Plaintiff or the Union, if in fact this would be considered a valid defense.

Exhibit 7 contains the Employer Monthly Contribution Report forms for Brydon Painting from March 2000 through September 2006. These Reports show payment according to the applicable rates. The Defendants, by their actions, ratified the various rates which were established after February 28, 2005.

14. The CBA requires an employer to include in their Monthly Contributions Report all employees and hours worked for work done under the CBA. Article 2, ¶2.4 states as follows:

> When an Employer desires to re-assign or employ Employees to perform work outside the scope of this Article in this Agreement, the following step **shall** be followed:
>
> 2.4.1 The payroll records **shall** contain an entry which clearly discloses when the particular Employee starts work not covered under the scope of the Agreement.

(emphasis added).

The Defendants assert that two employees, Paul James and Dirk S. Rickley, performed work outside the scope of the CBA during the months of November and December, 2005, and therefore the Defendants do not owe any money to the Trust Funds under the CBA.

An Audit was performed at the request of the Trust Funds by Steiner Accounting Services, Inc. The Audit Report is Exhibit 8 and is dated August 8, 2006. The audit itself commenced on July 26, 2006. The auditor noted that there were no entries in the payroll records to support the Defendants' position that Paul James and Dirk S. Rickley were performing work not covered by the contract. This was confirmed through the testimony of Carol Steiner Olsen.

Jodi Jackson testified that she never made any such notations due to the complexity of the payroll system she utilized.

In order to have the benefit of ¶2.4.1 the Defendants are required to strictly comply with the terms of the CBA. They did not do so with regard to Paul James and Dirk S. Rickley. They are, therefore, required to make the appropriate contributions to the Trust Funds for those two employees for the two months.

15. Carol Steiner Olsen, the auditor, sent out an audit request letter dated February 1, 2006 to the

Defendants. In response to that letter, Ms. Olsen received a call from Timothy Jackson in which he stated that he would refuse to comply with the request for an audit. Ms. Olsen received consent to the audit on on July 14, 2006.

Exhibit 14 is a letter dated February 25, 2006 from Tim Jackson to Steve Bloom of the International Union of Painters & Allied Trades, District Council #5. In that letter Mr. Jackson agreed to an audit "so that we can establish the exact amount of the over payment that you and your attorney John Ranquet have been forcing me to pay by threat of legal action." Mr. Jackson's "agreement" to allow an audit was limited to determining any over payment and was not an unqualified consent. The operative consent to proceed with the audit was not received until after this lawsuit was filed.

16. Exhibit 15 is not a complete exhibit as the document references a number of attachments which were not provided to the Court. They fail to prove that the benefits due, as calculated by the auditor and set forth in Exhibit 8, are in an incorrect amount. The Court finds that the benefits due from the Defendants is the sum of $4,084.50 as set forth in Exhibit 8.

17. The Defendants' prayer in their Answer and Affirmative Defenses (Dkt. #9) included requests for the return of excess employee contributions. The Defendants did not plead a specific counterclaim although they assert that their Affirmative Defense set forth at Page 3 of their Answer is, in fact, a counterclaim. The Plaintiffs object to the Court considering this "counterclaim" as they allege no counterclaim was ever plead, no discovery was conducted in that regard, and that they first became aware of a specific counterclaim when they received the Defendant's Trial Brief. (Dkt. #58, Plaintiffs' Supplemental Trial Brief). During trial the Plaintiffs also cited to the Defendants' Response to Plaintiff's Motion for Summary Judgment (Dkt. #17) at page 9, line 22 which reads as follows:

> Although Defendant Brydon has not filed a counterclaim as part of this action, Plaintiffs are not only entitled to recover for any deficiency, but no deficiency exists and they have actually been overpaid by Defendant Brydon for any trust contributions.

This Response is dated January 19, 2007, less than three months prior to the trial date and after the discovery cut-off date. This language confirms the Defendants' Affirmative Defense of payment.

While the Court has authority pursuant to Fed. R. Civ. Pro. 8(c) to treat a pleading as if there had been a proper designation, such as a counterclaim as opposed to an affirmative defense, this is appropriate only "if justice so requires." That is not the present circumstance. The Defendants' Answer clearly sets

forth, as an affirmative defense, the defense of payment. The Plaintiffs did not have notice the Defendants were asserting a counterclaim until the Defendants' trial brief was filed on March 23, 2007, just 12 days prior to trial. Yet, in the Defendants Response to the Plaintiffs' Motion for Summary Judgment the Defendants confirmed that no counterclaim had been filed

This Court finds that the Defendants failed to allege an appropriate counterclaim and that justice does not require treatment of their defense of payment as a counterclaim.

CONCLUSIONS OF LAW

18. The Defendants failed to make all the contributions to the Trust Funds as required by the applicable CBA and Trust Agreement (Exhibit 3). The Plaintiffs are awarded judgment against the Defendants for the unpaid benefits as found by the auditor and set forth in Exhibit 8 for a total sum of $4,084.50.

19. The Plaintiffs are entitled to an award of costs, attorney fees and interest as allowed by law.

DATED this 10th day of April, 2007.

Karen L. Strombom
United States Magistrate Judge